Christianna A. Cathcart, Esq.
Bar No. ND 10095
The Belmont Firm
1050 Connecticut Avenue, NW
Suite 500
Washington, DC 20036
Telephone: (202) 655-2066
E-mail: christianna@dcbankruptcy.com
*Counsel for Benjamin Srigley, Cynthia Srigley, and Srigley Development Company, LLC*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | Case No. 23-116-ELG |
| | ) | |
| TOUCHSTONE REMODELERS, LLC, | ) | (Chapter 7) |
| | ) | |
| Debtor. | ) | |
| | ) | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| FEDERICO M. BANDI, and | ) | |
| ANGELA M. BANDI | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Case No. 25-10009 |
| | ) | |
| v. | ) | |
| | ) | |
| BENJAMIN ROBERT SRIGLEY, | ) | |
| CYNTHIA TYBURCZY SRIGLEY, | ) | |
| TOUCHSTONE REMODELERS, LLC, | ) | |
| SRIGLEY DEVELOPMENT COMPANY, LLC, | ) | |
| Defendant. | ) | |

**<u>MOTION TO DISMISS</u>**

Come now, via limited and special appearance, Benjamin Srigley, Cynthia Srigley, and Srigley Development Company, LLC (collectively, the "Defendants"), by and through

1

undersigned counsel, pursuant to Federal Rule of Bankruptcy Procedure 7012 and Federal Rule of Civil Procedure 12(b), and move this Honorable Court to dismiss the above-captioned action with prejudice, and in support thereof states as follows:

## I.     Introduction

This adversary proceeding exists – fundamentally – because Frederico and Angela Bandi (the "Plaintiffs'), unsecured judgment creditors of a now-defunct limited liability company, remain unwilling to accept what the Bankruptcy Code makes unambiguous: when a cause of action is an asset of a bankruptcy estate, absent an order of a court to the contrary, only the trustee or debtor-in-possession possesses standing to bring the claim. Confronted with a trustee who has shown no interest in advancing their grievances, and with a bankruptcy system designed to insulate estate administration from precisely this kind of creditor overreach, the Bandis have taken a different path. They now seek to weaponize this Honorable Court as a forum for personal retribution. But they do so not through proper channels, nor with judicial authorization, but by filing this adversary complaint that attempts to usurp the trustee's exclusive authority, prosecute estate-based claims in their own names, and recast their status as aggravated unsecured creditors into something far more than the law permits.

The Complaint is admittedly expansive in length, but narrow in legal merit. It spans eight causes of action including fraudulent transfers, breach of fiduciary duty, civil conspiracy, and alter ego liability, all supposedly orchestrated to enrich the Srigleys at the expense of Touchstone Remodelers, LLC (the "Debtor" or "Touchstone"). Each claim is asserted "on behalf of the bankruptcy estate." Each seeks to redress harm the Debtor. And each, without exception, is a claim that may be brought only by the trustee, or a party who has been granted derivative standing through proper judicial process.

2

The Complaint fails for three independent and equally dispositive reasons. As a threshold matter, and arguably the most significant, the Bandis lack standing to bring these claims. Every cause of action asserted in the Complaint belongs to the bankruptcy estate; the Bandis are separate and distinct from the trustee, nor have they received permission from this Honorable Court to proceed derivatively on the estate's behalf. Their effort to assert claims in their personal capacity does not satisfy Article III's case or controversy requirement and deprives this Court of subject matter jurisdiction. Second, the Complaint is procedurally infirm. The record reflects no valid service of process on any of the Defendants. Without proper service, this Court lacks personal jurisdiction over the Defendants. And, third, the Complaint fails to state a claim for relief as against Ms. Srigley.

## II. Standard: Motion to Dismiss

This motion is brought pursuant to Federal Rule of Civil Procedure 12(b)(1), incorporated into bankruptcy adversary proceedings by Federal Rule of Bankruptcy Procedure 7012, which allows, "[e]very defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defense by motion: (1) lack of subject-matter jurisdiction…" Fed. R. Civ. P. 12(b)(1).

In construing such a motion, "the Court must accept as true all material facts alleged in the complaint. Only where the defendant raises a factual challenge to the jurisdictional facts in the complaint need the court look beyond plaintiff's allegations." *Asociacion De Reclaimants v. United Mexican States*, 561 F. Supp. 1190, 1191–92 (D.D.C. 1983) (citing *Williamson v. Tucker*, 645 F.2d 404, 412–13 (5th Cir. 1981); *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980); *Mortensen v. First Federal Savings & Loan Ass'n*, 549 F.2d 884, 891–92 (3d Cir. 1977); *Airline Pilots Ass'n Int'l v. Northwest Airlines, Inc.*, 444 F.Supp. 1138, 1142 (D.D.C.

3

1978)). *See also*, *Bailey v. Washington Metro. Area Transit Auth.*, 696 F. Supp. 2d 68, 71 (D.D.C. 2010) ("Because subject matter jurisdiction focuses on the court's power to hear the claim, however, the court must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a claim. Thus, the court is not limited to the allegations contained in the complaint. When necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.) (citing *Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C. Cir. 2003); *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001); *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986); *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)).

As recently observed by this Honorable Court, "[t]o survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 436 F. Supp. 3d 354, 357–58 (D. D.C. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). "A claim is facially plausible when the pleaded factual content 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Citizens for Responsibility & Ethics in Washington*, 436 F. Supp. 3d at 357–58 (quoting *Iqbal*, 556 U.S. at 678). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Indeed, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's

elements will not do." *Twombly*, 550 U.S. at 545 (quoting Fed. R. Civ. P. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

In evaluating a motion to dismiss, "the court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the court accept plaintiff's legal conclusions." *Citizens for Responsibility & Ethics in Washington*, 436 F. Supp. 3d at 357–58 (citing *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994); *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002)).

Further, while assessment of a motion to dismiss is generally confined to the four corners of an underlying pleading, "the court may consider documents extrinsic to the complaint if they are 'integral to and explicitly relied on in the complaint' and if there is no dispute as to their authenticity." *Tinsley v. OneWest Bank, FSB*, 4 F. Supp. 3d 805, 819 (S.D. W. Va. 2014) (citing *Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 222–23 (4th Cir. 2009); *Branin v. TMC Enterprises, LLC*, 832 F. Supp. 2d 646, 649 (W.D. Va. 2011); *Fisher v. Maryland Dep't of Pub. Safety & Corr. Servs.*, 2010 WL 2732334, at *2 n. 2 (D. Md. 2010)).

### III.   Standard: Insufficient Service of Process

A defendant may move to dismiss pursuant to Rule 12(b)(5) when a plaintiff fails to properly serve him with the summons and complaint. Federal Rule of Civil Procedure 12(b)(5) "requires the court to dismiss any case in which service of process was insufficient." *Hardwire, LLC v. Zero Int'l, Inc.*, 2014 U.S. Dist. LEXIS 146364 at *46-47 (D. Del. Oct. 14, 2024). "In resolving a motion under Ruler 12(b)(5), the party making service has the burden of demonstrating its validity when an objection to service is made." *Grand Entm't Grp. V. Star Media Sales*, 988 F.2d 476, 488 (3d Cir. 1993). Service in an adversary proceeding is governed by Federal Rule of Civil Procedure Rule 4(h), made applicable by Federal Rule of Bankruptcy Procedure 7004.

5

Case 25-10009-ELG    Doc 7    Filed 05/21/25    Entered 05/21/25 21:24:14    Desc Main
                            Document      Page 6 of 20

## IV.     Plaintiff's Allegations

The allegations of the Complaint – accepted as true for the sole limited purpose of this motion – pertinently set forth the following:

1. Plaintiffs allege that they are unsecured judgment creditors of Touchstone Remodelers LLC, a now-insolvent limited liability company currently in Chapter 7. Complaint DE #33 at ¶¶ 27, 30

2. Plaintiffs assert that Benjamin and Cynthia Srigley (the "Srigleys"), acting individually and through Srigley Development Company, LLC, exercised de facto control over the Debtor and misappropriated its assets. Id. at ¶¶ 31-34.

3. Plaintiffs claim the Srigleys undercapitalized the Debtor and engaged in a pattern of transferring company funds for their personal benefit, including scheduled "Owner Draws" totaling $191,4000.00 between January 2020 and April 2022. Id. at ¶ 39-50

4. The Complaint further alleges that the Debtor made 15 unscheduled withdrawals or transfers totaling $166,216.18 to accounts purportedly controlled by the Srigleys. Id. at ¶¶ 51-54.

5. Plaintiffs contend that the Debtor obtained $315, 393.23 in loans, including PPP funds and Bank of America business credit advances, some of which were allegedly diverted to non-business purposes. Id. at ¶¶ 55-62.

6. Plaintiffs further allege that the Srigleys used business credit cards for personal expenses and used the Debtors funds to purchase, maintain, and later sell a personal aircraft, without returning the sale proceeds to the Debtor. Id. at ¶¶ 74-91.

7. Plaintiffs assert that the Srigleys shut down the Debtor's business in late 2021 and continued to incur debt while allegedly transferring remaining funds for personal use. Id. at ¶¶ 102-124.

V.   **Argument: The Plaintiffs Lack Standing**

The Complaint is premised on a jurisdictional fiction: that two individual unsecured judgment creditors may usurp the statutory powers of a Chapter 7 trustee and prosecute estate-based causes of action in their own names, without appointment, authority, or leave of court. This attempt to displace the trustee's exclusive authority alone warrants dismissal.

Standing is not a mere procedural formality; it is a constitutional and prudential prerequisite to the exercise of federal jurisdiction. *See In re Gucci*, 126 F. 3d 380, 387-88 (2d Cir. 1997); *see also Breeden v. Kirkpatrick & Lockhart, LLC*, 268 B.R. 704, 708 (S.D.N.Y. 2001) ("Standing … is a threshold issue in all cases since putative plaintiffs lack standing are not entitled to have their claims litigated in federal court."). The doctrine of standing encompasses both Article III standing, rooted in the case-or-controversy requirement, and prudential standing, reflecting "judicially self-imposed limits on the exercise of federal jurisdiction." *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004); *see also Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 126-28 (2014). Absent standing, there is no case or controversy, and federal courts lack subject matter jurisdiction. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992). It is for this reason that standing must be decided as a threshold issue before the court may reach the merits. *See Steel Co v. Citizens for Better Env't*, 523 U.S. 83, 110 (1998).

This threshold inquiry takes on particular force in the bankruptcy context. The filing of a bankruptcy petition creates an estate that encompasses "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). A representative of the bankruptcy estate, including a bankruptcy trustee, stands in the shoes of the debtor and therefore has exclusive standing to assert causes of action belonging to the estate. *See In re Educators Group Health Trust*, 25 F. 3d 1281, 1284 (5th Cir. 1994); *accord Parker v. Wendy's Int'l, Inc.*, 365 F. 3d

7

1268, 1272 (11th Cir. 2004). But if a cause of action belongs solely to individual shareholders or creditors, the trustee lacks standing to assert the claim. See *id*. *See also In re Granite Partners*, 194 B.R. at 324 (the trustee is unable to "assert the personal, direct claims of creditors for the benefit of the estate or for a particular class of creditors.").

Plaintiff's assertion of estate-based avoidance claims falls squarely within this exclusive authority. Count I and II seek avoidance of fraudulent transfers under section 11 U.S.C. §§ 548 (a)(1)(A) and (a)(1)(B). But § 548 explicitly limits this cause of action to the trustee: "The Trustee may avoid any transfer…" 11 U.S.C. § 548. Plaintiffs cannot circumvent this statutory command by invoking their status as unsecured judgment creditors. *See In re Chase*, 37 B.R. 345, 347 (Bankr. D. Vt. 1983) ("Except as provided in Code section 522(h) …., the Code does not authorize debtor access to the lien avoidance powers specifically granted to the trustee in chapter 5 of the Code.").

Counts III and IV fare no better. They seek to avoid alleged fraudulent transfers under state law, purportedly brought through § 544(b) of the Bankruptcy Code. Yet, that provision of Title 11 is similarity constrained in its allowance "…. [t]he trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor…" 11 U.S.C. §544(b)(1).

Quite plainly, Section 544(b) and 548 of the Bankruptcy Code expressly vests in the trustee or debtor-in-possession the right to assert a claim for fraudulent conveyance under state or federal law." *AP Indus., Inc v. SN Phelps & Co. (In re AP Indus., Inc.)*, 117 B.R. 789, 799-800 (Bankr. S.D.N.Y. 1990). "It is axiomatic that a duly qualified trustee in bankruptcy represents the estate and is the only proper party to maintain any action under Bankruptcy Code § 544(b)…" *Best Mfr., Inc. v. White Plains Coat& Apron, Inc., (In re Daniele Laundries, Inc.)*, 40 B.R. 404, 408 (Bankr. S.D.N.Y. 1984).

Nor can Plaintiffs salvage these claims by recasting them as direct causes of action. The law draws a critical distinction between direct and derivative claims. Where the alleged harm is to the corporation, and the relief sought would benefit the estate, the claim is derivative and belongs exclusively to the trustee. *See St. Paul Fire & Marine Ins. Co.,* 884 F.2d 688, 697 (2d Cir. 1989). The appropriate test is whether the plaintiff can prevail without showing injury to the corporation. *Tooley v. Donaldson, Lufkin & Jerette, Inc.*, 845 A.2d 1031, 1036-37 (Del. 2004). If not, as is plainly the case here, then the claim is derivative and barred.

This analysis applies with equal force to Plaintiffs' remaining claims. Count V (breach of fiduciary duty, VI (Improper distribution), VII (common law conspiracy), and VIII (alter ego liability) are all rooted in alleged misconduct that purportedly injured the debtor entity. These claims assert no individualized harm to Plaintiffs separate and apart from harm suffered by the estate. Instead, they alleged mismanagement, wrongful diversion of assets, and other conduct that – if proven – would have depleted the corporation's assets and impaired the estate as a whole. As such, these claims are derivative in nature and may be asserted, if at all, only by the trustee.

Courts uniformly hold that breaches of fiduciary duty, wrongful distributions, and veil-piercing allegations premised on undercapitalization or misuse of the corporate form belong to the estate when asserted in the context of alleged harm to the debtor. See *Cowin v. Bresler*, 741 F.2d 410, 414 (D.C. Cir. 1984) ("Claims of corporate mismanagement must be brought on a derivative basis because no shareholder suffers a harm independent of that visited upon the corporation."); *Abrams v. Donati*, 66 N.Y.2d 951, 953 (1985) ("For a wrong against a corporation a shareholder has no individual cause of action); *Yudell*, 949 N.Y.S.2d at 348 (noting that "plaintiffs' claim for breach of fiduciary duty is derivative, because any pecuniary loss plaintiffs suffered derives from a breach of duty and harm to the business entity).

9

Because all of Plaintiffs' claims are either statutorily reserved to the trustee or are derivative of alleged harm to the company, the Plaintiffs lack standing to pursue any of them.

**B. Plaintiffs Are Not Entitled to Derivative Standing**

Even if Plaintiffs were attempting to assert these claims on a derivative basis on behalf of the estate, such an attempt must fail. Derivative standing is a narrow, judicially created exemption to the general rule that only a trustee may assert causes of action belonging to the estate. Courts recognize it only under limited and well-defined circumstances, and only when strict procedural prerequisites are met.

But even that limited pathway is foreclosed in this jurisdiction. There is no reported precedent in which this Honorable Court has granted derivative standing to a creditor to pursue litigation on behalf of the trustee. The sole topical case, from this circuit, to address such an arrangement is *Webster v. Senyi De Nagy-Unyom (In re Yelverton)*, 2012 Bankr. LEXIS 1653 (Bankr. D.D.C. Apr. 11, 2012), where derivative standing was denied.

*Yelverton* starkly sets forth the core problem with parties seeking derivative standing: "If the trustee is acting in the best interest of the estate, it is unclear why the court would exercise its equitable powers to grant another party derivative standing to pursue these claims." *Id.* at *7

Even in jurisdictions where derivative standing is recognized, courts impose a stringent four-part test. The creditor must demonstrate that: (1) it requested the trustee to pursue the claim; (2) the trustee unjustifiably refused; (3) the proposed claims are colorable; (4) the creditor sought and received prior approval from the bankruptcy court to pursue the claims. *See In re Commodore Int'l Ltd.*, 262 F.3d 96, 99–100 (2d Cir. 2001); *In re Cybergenics Corp.*, 330 F.3d 548, 566–67 (3d Cir. 2003); *In re Racing Servs., Inc.*, 540 F.3d 892, 900 n.8 (8th Cir. 2008).

Here, Plaintiffs satisfy none of these elements. First, although Plaintiff Angela Bandi did contact the trustee to request consent to pursue the claims, the trustee expressly declined to do so. That decision, far from being unjustified, reflects a sound exercise of fiduciary judgment. As the *Yelverton* court noted, a creditor's request for derivative standing must be supported by competent evidence, such as affidavits or oral testimony at an evidentiary hearing. See *In re Yelverton*, 2012 WL 1229752, at *9. No such evidentiary showing has been made here.

Moreover, the trustee's refusal is entirely reasonable. He has elected not to expose the estate to speculative, meritless litigation—particularly where the claims at issue, if pursued, could provoke Rule 9011 sanctions. As *Yelverton* acknowledges, a trustee acts within the scope of his discretion when choosing not to advance claims "moored only to the darkest conspiratorial beliefs of two layperson creditors who clearly carry a hefty vendetta against the Debtor and its principals." Id. The trustee's decision is a textbook example of acting in the best interests of the estate and is not grounds to circumvent the trustee's statutory authority.

Second, even if Plaintiffs were entitled to pursue these claims (which they are not), they failed to obtain prior approval of the bankruptcy court. This omission is fatal. Courts have made clear that derivative standing cannot be granted retroactively. *See In re Baltimore Emergency Services II Corp.*, 432 F.3d at 563 (holding "[w]e furthermore rejects plaintiffs' suggestions that it is possible to grant derivative standing retroactively in the absence of up-front approval by the bankruptcy court."). In holding so, the Fourth Circuit explained, "[c]onsent is the sine qua non in derivative suits of this type. If such suits are allowed at all, the consent must occur before, not after, the action is filed." Id. Because Plaintiffs filed this action without first obtaining the Court's consent, they lack standing as a matter of law, and this Court lacks authority to confer it after the fact. For this reason, as well, the Complaint must be dismissed.

11

**C. A Pro Se Litigant Cannot Maintain a Derivative Action**

Even assuming, arguendo, that derivative standing was available and that Plaintiff had satisfied the requisite procedural threshold, the Complaint must still be dismissed because Plaintiffs lack standing as a matter of law. Inherit in derivative standing is the pursuit of one or more claims on behalf of one or more third parties. And, by definition, where one advances a legal claim on behalf of one or more third parties. One is engaging in the practice of law. The Bandis are seeking to represent the Trustee – and by extension, the estate – in bringing this litigation.

Axiomatically, a pro se litigant cannot bring a derivative action. *See, e.g.*, *Fontanez v. Boeing Corp.*, 2022 U.S. Dist. LEXIS 90528, at *3-4 (D.D.C. May 16, 2022) ("Assuming arguendo that plaintiff is a Boeing shareholder, as a pro se litigant, he is nonetheless prohibited from bringing a shareholder derivative suit.") (citing *United States v. High Country Broad. Co.*, 3 F.3d 1244, 1245 (9th Cir. 1993); *Phillips v. Tobin*, 548 F.2d 408, 411-15 (2d Cir. 1976); *Pridgen v. Andresen*, 113 F.3d 391, 393 (2d Cir. 1997)); *Harris v. Wells Fargo Corp. Office Headquarters, HQ*, 2023 U.S. Dist. LEXIS 5894, at *6 (D. Md. Jan. 11, 2023) ("A pro se plaintiff cannot maintain a derivative action.") (quoting *Bluefeld v. Cohen*, 2017 WL 1546406, at *3 (D. Md. Apr. 27, 2017)); *Achilles v. Hoskins (In re Theos Fedro Holdings, LLC)*, 2023 Bankr. LEXIS 2979, at *8 n.7 (B.A.P. 9th Cir. Dec. 20, 2023) ("Achilles also purports to appeal as trustee of his personal trust. But trusts must be represented by licensed counsel. A pro se litigant cannot represent a separate and distinct legal entity in federal appeals.") (citing *D-Beam Ltd. P'ship v. Roller Derby Skates, Inc.*, 366 F.3d 972, 973-74 (9th Cir. 2004)).

The problem is compounded by the fact that Frederico Bandi is not an attorney. Yet, he is a co-signatory to the Complaint and purports to appear on behalf of the estate in a representative capacity. The pursuit of a derivative claim by a non-attorney is not merely impermissible but, too,

contemptuous. Under District of Columbia law, the unlicensed practice of law is punishable "as contempt" by the District of Columbia Court of Appeals. D.C. Ct. App. Rule 49(e)(1). And there is little question but that the regime proposed by the Bandis would amount to the unlicensed practice of law, insofar as they would necessarily be ". . . preparing any claim, demand, or pleading of any kind, or any written document containing legal argument or interpretation of law, for filing in any . . . court, or other tribunal." D.C. Ct. App. Rule 49(b)(2)(D).

While Angela Bandi is a licensed attorney, she did not file the Complaint as counsel of record, nor did she enter an appearance on behalf of the estate or the Trustee. Instead, she proceeds in her individual, pro se capacity. A licensed attorney appearing pro se cannot leverage her license to represent a third party, particularly when she is not engaged by the Trustee and has not sought leave of court to appear as counsel. Representation of the estate by either Plaintiff in this context is legally impermissible.

To make matters worse, Plaintiffs' have expressly acknowledged that they "would not be hiring an attorney, but that [they] would be representing [themselves] pro se." See Motion, DE #29, ¶ 27. And while District of Columbia law very familiarly permits attorneys licensed in other states to become members of the bar of this Honorable Court, either directly or *pro hac vice*, without running afoul of the prohibition on the unlicensed practice of law, D.C. Ct. App. Rule 49(c)(3), at least one of the Bandis is not licensed in any other state.

Quite simply, the Trustee is not seeking—and cannot seek—to engage the Bandis as special counsel, insofar as the Bandis are not both attorneys. 11 U.S.C. § 327. So, the Bandis are endeavoring, instead, to end-run the normative representation methodology by petitioning for derivative standing so they may represent the estate's interests without being engaged by the

13

Trustee. Yet they cannot do so for the same reason that they cannot represent *anyone's* legal interests without running afoul of the prohibition on the unlicensed practice of law.

## VI. Argument: Insufficient Service of Process

Service of process is the procedural mechanism by which a court asserts personal jurisdiction over a defendant. In bankruptcy adversary proceedings, service is governed by Federal Rule of Bankruptcy Procedure 7004, which incorporates select provisions of Federal Rule of Civil Procedure 4. As the Supreme Court has made clear, "[s]ervice of summons is the procedure by which a court having venue and jurisdiction of the subject matter of the suit asserts jurisdiction over the person of the party served." *Miss. Publ'g Corp. v. Murphree*, 326 U.S. 438, 444–45 (1946).

Federal Rule of Bankruptcy Procedure 7004(b) permits service by first-class mail in limited and well-defined circumstances:

> (1) an individual may be served by mailing the summons and complaint to the person's dwelling house, usual place of abode, or the place where the individual regularly conducts a business or profession…
>
> (3) a domestic corporation, partnership, or other unincorporated association must be served by mailing to the attention of an officer, managing or general agent, or an agent authorized by law to receive service…
>
> (9) a debtor must be served by mailing the documents to the address listed in the petition, or to another address the debtor designates in a filed writing

Fed. R. Bankr. P. 7004(b)(1), (3), (9)

Although mail service is permitted, courts have repeatedly held that its use requires a heightened degree of care. As the court in *McElhaney v. Student Loan Servs. (In re McElhaney)*, explained, "a higher standard of care" is required when using the "abbreviated procedure by mail," precisely because of the jurisdictional and due process implications involved. 142 B.R. 311, 313

14

(Bankr. E.D. Ark. 1992); see also *In re S. Indus. Banking Corp.*, 205 B.R. 525, 533 (E.D. Tenn. 1996).

Moreover, mailing to a respondent's last known address is insufficient if the respondent is not living at that address at the time service is attempted. *In re Barry*, 330 B.R. 28, 33 (Bankr. D. Mass. 2005). And even receipt of actual notice does not cure technically defective service where the court has not acquired personal jurisdiction. *In re Valeu*, 53 B.R. 549, 553 (Bankr. D.N.D. 1985). Here, Plaintiff failed to properly serve any of the named Defendants, and thus the Court lacks personal jurisdiction over them. Each attempted service is legally defective for the reasons below:

Plaintiff attempted to serve Benjamin Srigley by mailing the summons and complaint to his bankruptcy counsel, Maurice VerStandig, at The Belmont Firm. However, Rule 7004(b)(1) requires service on an individual at their dwelling or regular place of business—not through a third-party law office. Service on an attorney is ineffective unless that attorney is expressly or impliedly authorized to accept service on the individual's behalf. *See Reckling v. Okechuku*, 2007 WL 2473831, at *5 (D.N.J. Aug. 28, 2007). Plaintiff has neither alleged nor established that Mr. VerStandig had such authority, or that he ever represented Mr. Srigley in his personal capacity in this adversary proceeding.

Plaintiff similarly attempted to serve Touchstone Remodelers, LLC[1] and Srigley Development Company, LLC by mailing process to The Belmont Firm, again "c/o Benjamin Srigley." Under Rule 7004(b)(3), service on an entity must be directed to an officer or agent at the entity's business address. Although Touchstone Remodelers, LLC retained Mr. VerStandig in

---

[1] Undersigned counsel does not represent Touchstone Remodelers, LLC, nor is it clear how – or why – the Bandis are purporting to sue the debtor, on behalf of the debtor's estate. This is yet another reminder of why the pro se practice of derivative law is forbade.

15

connection with its bankruptcy, such representation does not create express or implied authority for Mr. VerStandig to accept service in an adversary proceeding. As *Reckling* confirms, "an attorney does not necessarily become an agent authorized in every instance to receive service of process." 2007 WL 2473831, at *5. Implied authority must be based on specific conduct and context—none of which are present here.

In fact, Plaintiff's own Form 2030 Disclosure of Compensation expressly disclaims adversary representation. See *McGranahan v. Notman (In re Notman)*, 2015 WL 5025265, at *3 (Bankr. E.D. Cal. Aug. 21, 2015) (recognizing and enforcing attorney agreements limiting representation to the main case and excluding adversary proceedings).

Cynthia Srigley was mailed process "c/o U.S. Food and Drug Administration." Plaintiff provides no indication that this is Ms. Srigley's residence, place of business, or any other authorized address for service. There is also no evidence that the FDA is authorized to accept service on her behalf. This effort does not satisfy the plain requirements of Rule 7004(b)(1).

In none of the above instances did Plaintiff serve a Defendant at a location authorized under Rule 7004. Nor did Plaintiff file any document indicating that a Defendant had designated the address used, or that their counsel had consented to accept service on their behalf. As such, none of the Defendants are properly before the Court.

The fact that any Defendant may have received actual notice is immaterial. As the Supreme Court has explained, "failure to give notice [or proper service] violates the most rudimentary demands of due process." *Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80, 84 (1988). The Third Circuit is equally clear that actual knowledge cannot cure defective service. *See Stranahan Gear Co. v. NL Indus.,* 800 F.2d 53, 56–58 (3d Cir. 1986).

Because Plaintiff has not complied with the service requirements of Rule 7004, dismissal is warranted under Fed. R. Civ. P. 12(b)(5), made applicable to adversary proceedings through Fed. R. Bankr. P. 7012(b). No Defendant has been brought within the Court's jurisdiction, and any further proceedings would contravene due process.

## VII. Argument: Various Causes of Action Fail to State a Claim for Relief

### a. Count V

The fifth count of the Complaint is purportedly for breach of fiduciary duty, asserting a claim against Mr. Srigley and Ms. Srigley. Yet the Complaint never clearly or cogently alleges Ms. Srigley to have been a member, officer or director of Touchstone and, as such, does not set forth a plausible claim for relief—capable of surviving analysis under *Iqbal* and *Twombly* as against her.

Familiarly, a claim for breach of fiduciary duty requires a showing that, *inter alia*, "(1) defendant owed plaintiff a fiduciary duty; (2) defendant breached that duty; and (3) to the extent plaintiff seeks compensatory damages — the breach proximately caused an injury." *Bode & Grenier, L.L.P. v. Knight*, 821 F. Supp. 2d 57, 64 (D.D.C. 2011) (quoting *Paul v. Judicial Watch, Inc.*, 543 F. Supp. 2d 1, 5-6 (D.D.C. 2008)).

Here, the Complaint does not—and, indeed, cannot—allege Ms. Srigley to have owed a fiduciary duty to Touchstone insofar as Ms. Sirgley is, and at all times relevant has been, a legal stranger to Touchstone.[2] Ms. Srigley, quite simply, has never held any position capable of imbuing

---

[2] The Plaintiffs include a footnote suggesting otherwise, with carefully hedged language. To be sure, as evidenced by Touchstone's statement of financial affairs, Ms. Srigley was never an owner, officer or director of the entity. And to the extent the Plaintiffs wish to contend otherwise, such is yet another reminder of the perils attendant to contemplating allowing disgruntled creditors—with seemingly nothing to lose— to stand in the shoes of a trustee; if they were to make such an allegation, for purposes of surviving a motion to dismiss, such would be met with a motion for sanctions under Rule 9011 and such sanctions, in turn, would create an administrative burden upon the Debtor's estate.

her with any fiduciary obligations to the Debtor. And even the statutory scheme relied upon the Plaintiffs—Section 29-804.09 of the District of Columbia Code—speaks only to the obligations of a "member" of a limited liability company. Since Ms. Srigley has never been a member of Touchstone, she is plainly unbound by these rigors.

  b. **Count VI**

The Plaintiffs next endeavor to set forth a claim for violation of Sections 29-804.05, 29-804.06, and 29-804.09 of the District of Columbia Code. Each of these code provisions concern potential liability of a member, to a limited liability company, for certain monetary activities. Yet, as discussed *supra*, Ms. Srigley is not—and never was—a member of Touchstone. And, for the reasons set forth in connection with the discussion of Count V of the Complaint, it is accordingly impossible for there to exist any cognizable claim for relief—as against Ms. Srigley—under these statutory provisions.

  c. **Count VII**

Count VII of the Complaint is for common law conspiracy. Yet it is, quite genuinely, impossible to surmise what illicit activity allegedly underlies the at-issue conspiracy. It does not appear the Plaintiffs have so much endeavored to identify a cognizable tort and an accompanying conspiracy as it appears, rather, the Plaintiffs have simply sought to defame Mr. and Ms. Srigley through the rambling echoes of a *pro se* pleading and then, *ipso facto*, announced some illicit conspiracy to be necessarily afoot. Such plainly does not comport with the pleading rigors attendant to Rule 8 and, as such, militates in favor of dismissal.

Under governing law, a claim for civil conspiracy requires a showing of "(1) an agreement between two or more persons (2) to participate in an unlawful act, and (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement pursuant to, and in furtherance

of, the common scheme." *Saucier v. Countrywide Home Loans*, 64 A.3d 428, 446 (D.C. 2013) (quoting *Paul v. Howard Univ.*, 754 A.2d 297, 310 (D.C. 2000)).

Critically, however, "[s]ince liability for civil conspiracy depends on performance of some underlying tortious act, the conspiracy is not independently actionable; rather, it is a means for establishing vicarious liability for the underlying tort." *Halberstam v. Welch*, 705 F.2d 472, 479 (D.C. Cir. 1983).

Here, the Srigleys have absolutely no idea what underlying tortious act is being alleged. While the Complaint rambles through a seemingly-endless list of consumer grievances, the pleading never cogently identifies any single tort upon which a conspiracy may be founded— especially as to Ms. Srigley who, as discussed *passim*, is a legal stranger to Touchstone.

Again, this is where the discretion of a trustee is of such critical import to the bankruptcy system. In this case, the Trustee, following a dispassionate analysis and after reviewing the Plaintiffs' numerous and plentiful writings, did not elect to pursue any litigation claims. Yet the Plaintiffs, unmoored to the steely fiduciary charge of a chapter 7 trustee and independently motivated to inflict terror upon those associated with an entity that would have the temerity to seek bankruptcy relief, have elected to bring this Complaint. In so doing, they overreach—time and again, often quite badly—trying to find claims that can survive a motion to dismiss, seemingly aiming to extend their vexatious onslaught that begat this bankruptcy in the first instance. Yet they simply cannot, and do not, successfully manage to achieve such, instead positing overly vague, non-conforming claims for relief—like one for "conspiracy" that does not so much as identify any underlying tort.

VIII. **Conclusion**

19

WHEREFORE, the Debtor respectfully prays this Honorable Court deny the Motion and afford such other and further relief as may be just and proper.

Respectfully submitted,

Dated: May 21, 2025  By: /s/ Christianna A. Cathcart
Christianna A. Cathcart, Esq.
Bar No. ND 10095
The Belmont Firm
1050 Connecticut Avenue, NW
Suite 500
Washington, DC 20036
Telephone: (202) 655-970-2770
E-mail: christianna@dcbankruptcy.com
*Counsel for Counsel for Benjamin Srigley, Cynthia Srigley, and Srigley Development Company, LLC*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 21st day of May 2025, a copy of the foregoing was served electronically upon filing via the ECF system.

/s/ Christianna A. Cathcart
Christianna A. Cathcart