

**FILED**

JUN 1 6 2025

Clerk, U.S. District and
Bankruptcy Courts

Federico M. Bandi
Angela M. Bandi
3606 Chesapeake Street, NW
Washington, DC 20008
Telephone: 773.620.1932
Email: fbandi1@jhu.edu
        angela.bandi@yahoo.com

*Unsecured Judgment Creditors of Touchstone Remodelers, LLC, filing Pro Se*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLUMBIA

In re:                                               |
                                                     |
TOUCHSTONE REMODELERS, LLC,                          |    Case No. 23-00116-ELG
                        Debtor.                      |    Chapter 7
                                                     |
_____             |
                                                     |
FEDERICO M. BANDI and                                |
ANGELA M. BANDI,                                     |
                        Plaintiffs,                  |
                                                     |
vs.                                                  |    Adv. Pro. No. 25-10009-ELG
                                                     |
BENJAMIN ROBERT SRIGLEY,                             |
CYNTHIA TYBURCZY SRIGLEY,                            |
TOUCHSTONE REMODELERS, LLC and                       |
SRIGLEY DEVELOPMENT COMPANY,                         |
LLC,                                                 |
                        Defendants.                  |
_____             |

## PLAINTIFFS' RESPONSE TO MOTION TO DISMISS OF DEFENDANTS BENJAMIN SRIGLEY, CYNTHIA SRIGLEY AND SRIGLEY DEVELOPMENT COMPANY, LLC

Federico M. Bandi and Angela M. Bandi (jointly, the "**Bandis**" or the "**Plaintiffs**"),

unsecured judgment creditors of Touchstone Remodelers, LLC (the "**Debtor**"), hereby respond

(the "**Response**") to the *Motion to Dismiss* of Defendants Benjamin Srigley, Cynthia Srigley and

Srigley Development Company, LLC, filed May 21, 2025 (the "**Motion to Dismiss**") (Dkt. No. 7

(Adv. Pro. No. 25-10009-ELG)). In support of their Response, Plaintiffs respectfully state as follows:

### PRELIMINARY STATEMENT

1.     On October 17, 2024, in the above-captioned bankruptcy case (the "**Bankruptcy Case**") under Chapter 7 of Title 11 of the United States Code (the "**Bankruptcy Code**"), Plaintiffs filed their *Motion for an Order Granting Derivative Standing to Prosecute on Behalf of the Estate, Claims Against the Debtor, Benjamin Robert Srigley, Cynthia Tyburczy Srigley, and Srigley Development Company, LLC* (the "**Motion for Derivative Standing**") (Dkt. No. 29 (Case No. 23-00116-ELG)). In the initial two paragraphs of their Complaint initiating the associated above-captioned adversary proceeding, Plaintiffs referenced the pending Motion for Derivative Standing before this Court, explaining that, while this Court had not yet issued an order on the motion, they were filing the Complaint before the imminent expiration of the two-year statute of limitations period to preserve their potential future rights to prosecute this adversary proceeding should this Court ultimately grant them derivative standing. *See* Complaint at 1-2 and ¶ 25 (Dkt. No. 1 (Adv. Pro. No. 25-10009-ELG)).

2.     Plaintiffs fully acknowledge that this Court may well not decide the motion in our favor. However, should this Court grant us derivative standing, Plaintiffs may properly bring the causes of action set forth in the Complaint.

3.     In their Motion to Dismiss, defendants Benjamin Srigley, Cynthia Srigley and Srigley Development Company, LLC (collectively, the "**Defendants**")[1] argue that the Complaint should be dismissed for the following three reasons: (i) Plaintiffs lack standing to

---

[1] The Debtor, who is named as a defendant in the Complaint, is not a party to the Motion to Dismiss, but for ease of reference, Plaintiffs will use the collective term "Defendants" to refer to the three movants.

bring the Complaint; (ii) "[t]he record reflects no valid service of process on any of the

Defendants," and as such, this Court lacks personal jurisdiction over the Defendants; and (iii) the

Complaint fails to state a claim for relief as against defendant Cynthia Srigley.[2] *See* Motion to

Dismiss at 3 (Dkt. No. 7 (Adv. Pro. No. 25-10009-ELG)).

       4.      With respect to (i), Plaintiffs requested derivative standing from this Court

prior to filing the Complaint, such standing would be appropriately granted under either the law

or the Court's equitable powers, and should this Court grant such standing, Plaintiffs may move

forward with the Complaint; (ii) Plaintiffs properly served process upon each of the four named

defendants in accordance with the requirements of Rule 7004(b) of the Federal Rules of

Bankruptcy Procedure (the "**Bankruptcy Rules**") and relevant case law; and (iii) each cause of

action set forth in the Complaint properly states a claim for relief, including, but not limited to

Counts Five, Six and Seven as against Cynthia Srigley as well as against Benjamin Srigley.

       5.      Defendants have commented on the "expansive" length of the Complaint.

*See* Motion to Dismiss at 2 (Dkt. No. 7 (Adv. Pro. No. 25-10009-ELG)). Plaintiffs agree that the

Complaint is not short. And nor could it be, given the extensive nature of the Defendants' various

misdeeds, which are described therein in detail, plead with specificity and carefully supported by

facts and documentary evidence.

       6.      For the reasons discussed herein, Defendants' Motion to Dismiss should

be denied.

---

[2] Plaintiffs are not admitting to the validity or accuracy of Defendants' re-characterization of the allegations contained in the Complaint, but rather refer this Court to the actual language of the Complaint, which is, upon information and belief, an accurate description of the facts and circumstances discussed therein. We did note two minor typographical errors in the figures contained in section IV of the Motion to Dismiss: (1) in item 3, "$191,4000.00" should be "$191,400.00"; and (2) in item 5 "$315, 393.23" should be "$315,392.23." *See id.* at 6.

## LEGAL STANDARD

7.      To survive a Rule 12(b) motion to dismiss, "a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged. The plausibility

standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility

that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)).

8.      "When there are well-pleaded factual allegations, a court should assume their

veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*,

556 U.S. at 679.

9.      "In evaluating a motion to dismiss under Rule 12(b)(6), a court must 'treat the

complaint's factual allegations as true and must grant plaintiff 'the benefit of all inferences that

can be derived from the facts alleged.'" *Citizens for Responsibility & Ethics in Washington v.*

*U.S. Dep't of Justice*, 436 F. Supp. 3d 354, 357-8 (D.D.C. 2020) (citing *Sparrow v. United Air*

*Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (other citations omitted). *See also Iqbal*, 556

U.S. at 678-9; *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). In ruling

upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only 'the

facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the

complaint, and matters about which the Court may take judicial notice.'" *Citizens for*

*Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 436 F. Supp. at 358 (citations

omitted).

4

## ARGUMENT

I.      **Plaintiffs Requested Derivative Standing from this Court Prior to Filing Their Complaint So That They May Bring the Causes of Action Set Forth Therein**

10.      In October of 2024, Plaintiffs filed their Motion for Derivative Standing with this Court. This Court has not yet issued an order on the motion, however, if the Court ultimately decides in their favor, Plaintiffs will have derivative standing to prosecute the causes of action set forth in the Complaint.[3] *See* ¶¶ 1-2, *supra*.

11.      In April of 2025, as the two-year statute of limitations period was set to expire, Plaintiffs filed the Complaint solely to preserve their rights to prosecute the claims described therein should this Court grant them derivative standing. *See id.* at 1-2 and ¶ 25.

12.      Defendants argue that Plaintiffs cannot salvage the claims in the Complaint "by recasting them as direct causes of action." *See* Motion to Dismiss at 9 (Dkt. No. 7 (Adv. Pro. No. 25-10009-ELG)). This argument is irrelevant as, at no time during this process have Plaintiffs asserted that they have a direct right to bring the causes of action set forth in the Complaint. To the contrary, as early as July 5, 2024, Plaintiffs requested from William Douglas White, who is serving as Chapter 7 trustee in the Bankruptcy Case (the "**Trustee**"), consent for derivative standing to file a complaint against the Defendants. *See* Motion for Derivative Standing at ¶¶ 18-19 and Appendix E (Dkt. No. 29 (Case No. 23-00116-ELG)).

A.      **A Grant of Derivative Standing in Favor of the Plaintiffs Is Appropriate Under Both the Law and the Court's Equitable Powers**

13.      As to the legal standard for authorizing derivative standing and the

---

[3] Defendants themselves acknowledge that the claims contained in the Complaint may be brought by "a party who has been granted derivative standing through proper judicial process." *See* Motion to Dismiss at 2 (Dkt. No. 7 (Adv. Pro. No. 25-10009-ELG)).

application of relevant case law to the facts in the Bankruptcy Case, Plaintiffs have addressed

these issues in depth in their Motion for Derivative Standing and associated reply and thus, will

not restate their arguments again here. *See* Motion for Derivative Standing at ¶¶ 40-59 and 60-84

(Dkt. No. 29 (Case No. 23-00116-ELG)); *Reply to Trustee's Response and Benjamin Srigley's*

*Opposition to Motion for an Order Granting Derivative Standing to Prosecute on Behalf of the*

*Estate, Claims Against the Debtor, Benjamin Robert Srigley, Cynthia Tyburczy Srigley and*

*Srigley Development Company, LLC*, filed on November 18, 2024 (the "**Reply to Response to**

**Motion for Derivative Standing**") at ¶¶ 10-22 (Dkt. No. 32 (Case No. 23-00116-ELG)).

14.     In support of their argument that Plaintiffs are not entitled to derivative

standing, Defendants cite *Webster v. De Nagy-Unyom (In re Yelverton)*.[4] According to

Defendants, the core problem with parties seeking derivative standing is set forth in *In re*

*Yelverton*: "'[i]f the trustee is acting in the best interest of the estate, it is unclear why the court

would exercise its equitable powers to grant another party derivative standing to pursue these

claims.'" *See* Motion to Dismiss at 10 (Dkt. No. 7 (Adv. Pro. No. 25-10009-ELG)).

15.     However, *In re Yelverton* is not an analogous situation for several critical

reasons. Most importantly, the plaintiff in that case was the Chapter 7 *debtor*, not a creditor.

According to Judge Teel, "[e]ven if the debtor had met his burden to show that the trustee's

refusal to pursue these claims was unjustified (which he did not), *it is unlikely that this court*

*would permit a chapter 7 debtor to pursue avoidance claims under a theory of derivative*

*standing....* A trustee's avoidance powers are conferred on the trustee for the benefit of creditors,

and it is creditors who have the necessary stake to have standing to request permission to pursue

---

[4] Case No. 09-00414, 2012 WL 1229752 (Bankr. D.D.C. Apr. 11, 2012).

avoidance actions under a theory of derivative standing." *Id.* at \*7-8 (emphasis added).

16.     In addition, the trustee in *In re Yelverton* had expressly abandoned the

claims at issue in the case, which has not occurred in this Bankruptcy Case. The court found that

the trustee's notice of abandonment "suggest[ed] that his decision not to pursue the avoidance

claims [was] based upon a good faith determination that pursuing the claims would not benefit

the estate." *Id.* at \*5.

17.     Defendants also cite *In re Yelverton* as support for the proposition that "a

trustee acts within the scope of his discretion when choosing not to advance claims 'moored only

to the darkest conspiratorial beliefs of two layperson creditors who clearly carry a hefty vendetta

against the Debtor and its principals.'"[5] *See* Motion to Dismiss at 11 (Dkt. No. 7 (Adv. Pro. No.

25-10009-ELG)).

18.     Here again, *In re Yelverton* is distinguishable. As opposed to their claims

against Defendants, Plaintiffs suspect that the plaintiff's claims in *In re Yelverton* were not

colorable. Complicating matters may have been the fact that the plaintiff's claims were against

his former spouse. *Id.* at \*2. The D.C. Circuit of Appeals recognized that:

> [o]ver the course of the bankruptcy proceedings, Yelverton filed "over 40 lawsuits,
> adversary bankruptcy proceedings, or appeals of the bankruptcy court's rulings," and
> within those lawsuits "over 150 motions, including over 50 motions to reconsider,
> vacate, amend, or obtain relief from a judgment or order." In response to Yelverton's
> many frivolous challenges, the district court entered a pre-filing injunction against him
> on August 6, 2014. The injunction barred him from filing "any new civil action in [that]
> Court" without first receiving the court's permission. This court upheld the pre-filing
> injunction.

*US ex rel. Yelverton v. Federal Ins. Co.*, No. 15-7045 (D.C. Cir. 2016) at 3 (citing *Yelverton v.*

---

[5] Plaintiffs believe the citation to *In re Yelverton* was made in error here as that case did not involve two
creditors (layperson or otherwise), but rather the plaintiff was an individual debtor.

*Webster (In re Yelverton)*, 526 B.R. 429, 430, 433, 435 (D.D.C. 2014) and *Yelverton v. Webster*

*(In re Yelverton)*, No. 14-7147, 2015 WL 1606965, at *1 (D.C. Cir. Mar. 9, 2015)).

19.        In contrast to the facts in *In re Yelverton*, the Trustee has not explicitly

abandoned the claims in the Bankruptcy Case, nor has he indicated that he is not pursuing

litigation because he believes the claims are not colorable or that they would not benefit the

estate. Instead, the Trustee's primary reason or not pursuing litigation in this Case seems to be

that the Estate currently has no assets. Moreover, he has suggested to the Plaintiffs several

alternative options to derivative standing for the purpose of pursuing such claims. *See* Reply to

Response to Motion for Derivative Standing (Dkt. No. 32 (Case No. 23-00116-ELG)). at ¶ 2;

Motion for Derivative Standing at ¶ 24 and Appendix E.

**B.        <u>The Bankruptcy Courts May Retroactively Grant Derivative
Standing to a Creditor</u>**

20.        Defendants claim that Plaintiffs may not be granted derivative standing as

they failed to obtain prior approval of this Court. "Because Plaintiffs filed this action without

first obtaining the Court's consent, they lack standing as a matter of law, and this Court lacks

authority to confer it after the fact." *See* Motion to Dismiss at 11 (Dkt. No. 7 (Adv. Pro. No.

25-10009-ELG)).

21.        As the weight of existing federal authority holds otherwise, Defendants

arguments fail as a matter of law. The Eighth Circuit has explicitly held that "the bankruptcy

courts may retroactively grant a creditor derivative standing." *In re Racing Services, Inc.*, 540

F.3d 892, 905 (8th Cir. 2008). "Because a creditor may not prosecute a derivative suit without the

bankruptcy court's permission, the filing of an adversary complaint in itself does not affect the

8

estate's administration. In other words, the timing of the creditor's motion is in most cases of

little consequence." *Id.* at 904-5.

22.        Recognizing the practice of numerous federal courts granting creditors

retroactive permission (*i.e.*, *nunc pro tunc* relief) to file derivative adversary complaints, the

Eighth Circuit noted that, "while we agree 'the better practice is for the [creditor] to secure

approval before filing [its] complaint, we will not foreclose the ability of a court to make its

approval of the [complaint] retroactive to the time of the filing.'... And as one bankruptcy court

recognized, equity may demand granting retroactive derivative standing because of extenuating

circumstances." *Id.* at 904-5 (citing *In re Spaulding Composites Co.*, 207 B.R. 899, 904-05 (9th

Cir. B.A.P. 1997); *Official Comm. of Unsecured Creditors of Nat'l Forge Co. v. Clark (In re Nat'l

Forge Co.)*, 326 B.R. 532, 545-546 (W.D. Pa. 2005) (citing nearly a dozen cases in which courts

have permitted retroactive grants of derivative standing); *Catwil Corp. v. Derf II (In re Catwil

Corp.)*, 175 B.R. 362, 365-66 (Bankr. E.D.Cal. 1994) (observing that filing an adversary

complaint before seeking court approval because the statute of limitations is about to run may

justify retroactive authorization)).

23.        Similarly, the Sixth Circuit has authorized the application of derivative

standing after the adversary complaint was filed, noting the "flexible equitable power" of

bankruptcy courts to craft remedies in situations where a trustee cannot or will not pursue a

claim. *See In re Full Spectrum Mgmt.*, 621 B.R. 421 (Bankr. W.D. Mich. 2020) (citing *Isaacs v.

DBI- ASG Coinvestor Fund III, LLC (In re Isaacs)*, 895 F.3d 904, 916 (6th Cir. 2018)).

24.        In support of their argument, Defendants cite *In re Baltimore Emergency

Services II, Corp.*, 432 F.3d 557, 563 (4th Cir. 2005) for the proposition that derivative standing

cannot be granted retroactively.[6] *See* Motion to Dismiss at 11 (Dkt. No. 7 (Adv. Pro. No.

25-10009-ELG)). The Eighth Circuit in *In re Racing Services* rejected this argument, noting that

the Fourth Circuit in *In re Baltimore Emergency Services II* relied on *In re Catwil Corp.* as

support for its position, however, the bankruptcy court in *In re Catwil Corp.* not only

unequivocally approved of the practice of retroactive grants of derivative standing but

"approve[d] the [creditors'] Committee's application for [retroactive] authorization to prosecute"

its complaint. *See In re Racing Services, Inc.*, 540 F.3d at 905, n. 13.

       25.       The specific extenuating circumstance of a creditor's time pressure to file

suit before leave of court could formally be obtained, has been recognized as justification for a

retroactive grant of standing. "So long as the creditor (or creditors' committee) files its proposed

derivative complaint within the applicable statute of limitations period, the bankruptcy court

should evaluate both whether a retroactive grant of standing is proper and the merits of the

proposed derivative action." *In re Racing Services, Inc.*, 540 F.3d at 905, n. 14. Even in cases in

which a motion for retroactive standing was filed after the statute of limitations had run (which is

not the case with Plaintiff's motion, which was filed prior), "the bankruptcy court should be wary

of denying retroactive standing when the proposed derivative complaint has merit." *Id. See also*

*In re Rosenblum*, 545 B.R. 846 (Bankr. E.D. Pa. 2016) (citing *In re Nat'l Forge Co.,* 326 B.R. at

554-5); *In re Catwil Corp.*, 175 B.R. at 365-66.

     **C.**       <u>**Plaintiffs Are Not Seeking to Represent the Trustee, but Rather to**</u>
<u>**"Stand In the Shoes of the Trustee"**</u>

       26.       The Defendants further claim that the Plaintiffs lack standing because they

---

[6] In any event, the situation in *Baltimore Emergency Services II* is distinguishable from that in the instant case. As noted by the Fourth Circuit: "plaintiffs have already received equitable relief, it is certainly too late to grant them standing." *Id.* at 564.

"are seeking to represent the Trustee – and by extension, the estate – in bringing this litigation."

Plaintiffs are not seeking to represent the Trustee,[7] but rather have requested that this Court grant

us derivative standing "to allow us to step into the shoes of the Trustee." *See* Motion for

Derivative Standing at ¶ 29 (Dkt. No. 29 (Case No. 23-00116-ELG)).

       27.      Just as in the Opposition to Motion for Derivative Standing, Defendants'

Motion to Dismiss conflates the Plaintiffs' request for derivative standing with the concept of

special counsel as authorized pursuant to Section 327 of the Bankruptcy Code, stating that

"[q]uite simply, the Trustee is not seeking — and cannot seek — to engage the Bandis as special

counsel, insofar as the Bandis are not both attorneys."[8] *See* Motion to Dismiss at 13 (Dkt. No. 7

(Adv. Pro. No. 25-10009-ELG)); Opposition to Motion for Derivative Standing at 5 (Dkt. No. 30

(Case No. 23-00116-ELG)).

       28.      Defendants then argue that a *pro se* litigant cannot bring a derivative

action, citing a number of decisions involving *pro se* plaintiffs attempting to represent

corporations (primarily in shareholder derivative actions) and a trust in one instance,[9] in various

capacities, some derivative actions (e.g., *Phillips v. Tobin*, 548 F.2d 408, 411-15 (2d Cir. 1976))

and some direct ones (e.g., *D-Beam Ltd. P'ship v. Roller Derby Skates, Inc.*, 366 F.3d 972,

---

[7] This would imply an attorney-client relationship between the Plaintiffs and the Trustee, which does not
exist in the context of derivative standing.

[8] Plaintiffs have already responded to the inaccuracy of Defendants' statement, stating "[i]t is precisely
the Trustee who suggested to the Bandis the option of employing Mrs. Bandi to act as special counsel
pursuant to Section 327 of the Bankruptcy Code. The discussion relating to this issue at ¶ 29 of the
Motion [for Derivative Standing] addresses practical considerations raised by the Bandis themselves
(which, incidentally, are not insurmountable) and reflects the fact that Bandis take very seriously the legal
requirements relating to the practice of law before this Court." *See* Reply to Response to Motion for
Derivative Standing") at ¶9 (Dkt. No. 32 (Case No. 23-00116-ELG)) (internal citations omitted).

[9] *Achilles v. Hoskins (In re Theos Fedro Holdings, LLC)*, 2023 Bankr. LEXIS 2979, at *8 n.7 (B.A.P. 9th
Cir. Dec. 20, 2023).

973-74 (9th Cir. 2004)). None of these cases involve a creditor, creditor's committee, debtor, or any other interested party in a bankruptcy case, who sought derivative standing as a *pro se* plaintiff.

29.    The instant case is immediately distinguishable from the cases cited by the Defendants. First, in shareholder derivative actions, the individual shareholder is essentially stepping into the shoes of the corporation to bring the claims at issue. It is well-established that corporations may not represent themselves but must be represented by an attorney, and thus follows that an individual shareholder, who has stepped into the corporation's shoes, must also be represented by an attorney.

30.    Instead, Plaintiffs would be stepping into the shoes of the Trustee, an individual, who could presumably appear *pro se* to represent himself in court. In addition, Section 327(d) of the Bankruptcy Code explicitly permits the court to authorize a trustee to act as attorney for the estate (if the court finds such authorization to be in the best interest of the estate).

31.    Assuming this Court were to deem the following actions necessary, if this Court were to admit Angela Bandi[10] to practice before the Court pursuant to the requirements of Local Rule 2090-1(b), Mrs. Bandi could then seek leave of court to appear as counsel of record for the Plaintiffs in the Complaint.

32.    Finally, one must consider that the ultimate beneficiaries of the Debtor's estate are the Debtor's creditors (as well as the Trustee himself). Currently, the estate has "no assets" to distribute to creditors. So, if no action is taken, creditors will receive no portion of their claims. In contrast, should the Court permit our Complaint to go forward, given that

---

[10] Mrs. Bandi is an active member in good standing of the Florida Bar (Bar. No. 48720). *See* Reply to Response to Motion for Derivative Standing at ¶¶ 6-7 (Dkt. No. 32 (Case No. 23-00116-ELG)).

Plaintiffs may eventually recover assets for the estate, it follows that creditors would benefit

from this outcome.

33.      Moreover, even if Plaintiffs' lawsuit were unsuccessful in obtaining the

full amount of creditor claims owed by the Debtor (which were not less than $1,088,765.67 as of

June 25, 2024), creditors would still have the right, as permitted by governing federal and state

law, to take action outside of the bankruptcy process to collect on any remaining amount of the

respective debts owed to them.[11]

34.      As to the Debtor's other existing creditors, namely American Express

National Bank, Builders Mutual Insurance Company, Capital One N.A and the D.C. Government

Office of Tax and Revenue, Plaintiffs note that these are sophisticated entities, who are

represented by counsel. To the best of our knowledge, none of these creditors have objected to

our Motion for Derivative Standing (or any other filing we have made during these proceedings).

**II.      <u>Service of Process Was Properly Made Upon the Defendants</u>**

35.      Plaintiffs properly served the summons and Complaint upon each of the

Defendants, in accordance with the requirements of Bankruptcy Rule 7004(b) and Rule 4 of the

Federal Rules of Civil Procedure. As such, all Defendants are subject to this Court's jurisdiction.

**A.      <u>Plaintiffs Properly Served the Debtor and Srigley Development
Company, LLC</u>**

36.      Plaintiffs properly served the summons and Complaint upon the Debtor,

Touchstone Remodelers, LLC, and upon Srigley Development Company, LLC by sending it first

class United States mail, addressed to Benjamin Srigley, Officer, to the following address:

---

[11] In other words, Plaintiffs' actions would not limit the recovery of other creditors, which further
distinguishes the instant situation from that of a shareholder derivative suit.

c/o Maurice VerStandig
The Belmont Firm
1050 Connecticut Avenue, NW, Suite 500
Washington, DC  20036

37.        Pursuant to Bankruptcy Rule 7004(b)(9), service by mail is proper upon the debtor "by mailing the copy to the address shown on the debtor's petition or the address the debtor specifies in a filed writing." Bankruptcy Rule 7004(b)(3)(A) specifies that service by mail upon a domestic or foreign corporation, or a partnership or other unincorporated association is proper by mailing the copy to an officer, a managing or general agent, or an agent authorized by appointment or by law to receive service. As the Debtor in this Bankruptcy Case is an LLC, it follows that service by mail upon an officer of the Debtor would constitute proper service.

38.        According to the Petition, as well as other evidence filed in the Bankruptcy Case and this associated adversary proceeding, Benjamin Srigley is both an officer of the Debtor and an officer of Srigley Development Company, LLC.[12] Thus, Benjamin Srigley is an appropriate party to receive service for both the Debtor and for Srigley Development Company, LLC.

39.        As to the address for service upon the Debtor, mailing the summons and Complaint to either: (1) the address shown on the Petition or (2) to an address the Debtor specifies in a filed writing would be proper. *See* Bankruptcy Rule 7004(b)(9).

40.        With respect to (1), serving the Debtor by mail to an address shown on the Petition is particularly problematic as none of the three mailing addresses shown in the Petition for either the Debtor or for its designated "sole managing member, officer and authorized

---

[12] *See, e.g.*, Complaint at ¶¶ 28-29 (Dkt. No. 1 (Adv. Pro. No. 25-10009-ELG)).

representative,"[13] Benjamin Srigley, is currently valid. Upon information and belief, the Debtor

has not yet revised or amended the Petition to provide a current address for the Debtor, in

violation of the explicit requirements of Bankruptcy Rule 4002(a)(5) and Local Rule 4002-1 of

the United States Bankruptcy Court for the District of Columbia (the "**Local Rules**").

41.     On separate occasions, Plaintiffs requested a current address for both the

Debtor and its officer, Mr. Srigley, from their counsel, Mr. VerStandig. The first of these was

October 19, 2023, when Plaintiffs became aware that neither business address contained in the

Petition for the Debtor was valid. The second occasion was February 14, 2024, once Plaintiffs

realized that the address shown in the Petition for Benjamin Srigley was likely no longer current.

Mr. VerStandig did not provide a current address to Plaintiffs in either instance, and did not

respond at all to the second request.[14]

42.     As regards Benjamin Srigley, Plaintiffs additionally retained a professional

process server, Vincent Buckey, to serve Mr. Srigley in person at the South Carolina address

provided-in the Petition. Mr. Buckey confirmed that "all reasonable inquiries suggest[ed] the

defendant moved to an undetermined address... [no] forwarding information available for

Srigley." *See* Affidavit of Non-Service, signed by Vincent Buckey, Process Server, dated March

27, 2024 (filed on April 1, 2024) (Dkt. No. 22 (Case No. 23-00116-ELG)). Mr. Buckey was

equally unsuccessful in finding a home address in South Carolina for the Srigleys using a skip

---

[13] These are Defendants' words. Plaintiffs continue to dispute the veracity of the representations made in the Petition and maintain that Cynthia Srigley was also an officer and member of the Debtor. *See* Complaint at ¶ 28 (Dkt. No. 1 (Adv. Pro. No. 25-10009-ELG)); *Motion for Entry of an Order Pursuant to Rule 2004 Authorizing Examinations and for the Production of Documents*, filed in this Bankruptcy Case on October 18, 2023 (the "**Rule 2004 Motion**") at ¶1 (Dkt. No. 6 (Case No. 23-00116-ELG)).

[14] *See Motion to Amend Motion for Entry of an Order Pursuant to Rule 2004 Authorizing Examinations and for the Production of Documents* (the "**Motion to Amend**") at ¶1 (Dkt. No. 7 (Case No. 23-00116-ELG)); Motion for Derivative Standing at ¶17 (Dkt. No. 29 (Case No. 23-00116-ELG)).

trace. *See* Motion for Derivative Standing at ¶17 (Dkt. No. 29 (Case No. 23-00116-ELG)).

During this same time frame, Plaintiffs also received returned mail sent to Benjamin Srigley at

the South Carolina address shown in the Petition, marked "Return to Sender," "Not Deliverable

as Addressed," and "Unable to Forward." Since then, Plaintiffs have been able to find a post

office box address that may be associated with the Srigleys, but not a current physical address for

either a dwelling or place of business. Plaintiffs are continuing to monitor the situation and will

take additional steps as necessary.

43.    The fourth and final address on the Petition, and the sole mailing address

which appears to be correct, is that of Mr. VerStandig of The Belmont Firm at 1050 Connecticut

Avenue, NW, Suite 500, Washington, DC  20036.

44.    With respect to (2), serving the Debtor by mail to an address the Debtor

specifies in a filed writing, on or about April 17, 2025, Court records available on the CM/ECF

system listed Benjamin Srigley's address as c/o The Belmont Firm.[15] Further, on or about

November 3, 2024, Mr. Srigley filed his Opposition to Motion for Derivative Standing in the

Bankruptcy Case (Dkt. No. 30 (Case No. 23-00116-ELG)), listing Mr. VerStandig of The

Belmont Firm as his counsel.[16]

45.    In addition, Bankruptcy Rule 7004(b)(8) provides that, if an individual or

business entity is a defendant, it suffices to mail the summons and complaint to the defendant's

agent under the following conditions: (a) the agent is authorized by appointment or by law to

---

[15] *See* true and correct copy of photograph taken of CM/ECF records at the Bankruptcy Clerk's Office at the E. Barrett Prettyman U.S. Courthouse on April 17, 2025, attached in **Appendix A**. Defendants were served by mail on April 28, 2025.

[16] The Debtor is not joined with Mr. Srigley as a party to this filing and is described therein as "a zombie entity," however, it is the "Debtor" who prays this Court for relief on the filing. *Id.* at 1, 7.

accept service; (b) the mail is addressed to the agent's dwelling or usual place of abode or where

the agent regularly conducts a business or profession; and (c) if the agent's authorization so

requires, a copy is also mailed to the defendant as provided in this subdivision (b).

46.    The authority of an agent, such as an attorney, to accept service may be

implied as well as express. "In sum, the basic concept that a party's bankruptcy attorney can be

authorized impliedly to accept service of process on the client's behalf in a related adversary

proceeding is neither novel nor inconsistent with general principles of agency law." *See In re*

*Focus Media,* 387 F.2d 1077, 1082 (9th Cir. 2004), *cert. denied, sub nom, Rubin v. Pringle,* 125

S.Ct. 1674 (2005) (holding that in an adversary bankruptcy proceeding, Bankruptcy Rule

7004(b)(8)'s designation of "an agent of [a] defendant authorized by appointment to receive

service of process" can include an agent impliedly authorized to accept service of process on a

client's behalf if (1) the agent is the attorney representing the party in the related bankruptcy

proceeding, and (2) the totality of the surrounding circumstances demonstrates the intent of the

client to convey such authority). *See also In re Reisman,* 139 B.R. 797 (Bankr. S.D.N.Y. 1992)

(*citing United States v. Davis,* 38 F.R.D. 424, 425-26 (N.D.N.Y. 1965) ("[t]here is no fear... that

service of the summons and complaint upon [the attorney] would not be brought home to each

principal.... That service of process upon their lawyer would bring notice of the lawsuit to [the

client] seems beyond argument and is evident here from the motion itself in their behalf to quash

the service.").

47.    Given the degree of Mr. VerStandig's involvement in the Bankruptcy Case

and the fact that he has been the only point of contact for the Debtor in that case (as the Debtor

has refused to provide a current physical address, telephone number, email address or any other

form of contact information for either of its officers, Benjamin Srigley or Cynthia Srigley), it

follows that Mr. VerStandig is impliedly authorized to accept service on both the Debtor's and

Mr. Srigley's behalf.

48.    Indeed, Mr. VerStandig has accepted service on behalf of the Debtor in the

Bankruptcy Case, as "Attorney & Authorized Agent of Touchstone Remodelers, LLC."[17]

49.    Mailing the summons and Complaint to Benjamin Srigley c/o The

Belmont Firm address or to Mr. VerStandig at that address constitutes proper service by mail

upon the Debtor pursuant to the provisions of Bankruptcy Rule 7004(b)(3)(A), 7004(b)(8) or

7004(b)(9) and upon Srigley Development Company, LLC pursuant to Bankruptcy Rule 7004(b)

(3)(A).

**B.    <u>Plaintiffs Properly Served Benjamin Srigley</u>**

50.    Plaintiffs properly served the summons and Complaint upon Benjamin

Srigley by sending it first class United States mail c/o Maurice VerStandig of The Belmont Firm,

1050 Connecticut Avenue, NW, Suite 500, Washington, DC 20036.

51.    Service of process upon an individual is properly effectuated by mailing

the summons and complaint "to the individual's dwelling or usual place of abode or where the

individual regularly conducts a business or profession." Bankruptcy Rule 7004(b)(1). In the case

of an individual who is a defendant, proper service by mail may also be made to the defendant's

agent. *See* Bankruptcy Rule 7004(b)(8).

52.    As discussed in ¶¶ 41-42 *supra*, despite due diligence on their part,

Plaintiffs have been unable to locate a currently valid physical address for Benjamin Srigley's

---

[17] *See* Affidavit of Process Server Aidan Doyle, filed March 22, 2024 (Dkt. No. 20 (Case No. 23-00116-ELG)).

dwelling or place of business. Further, as noted in ¶ 44, Court records list Benjamin Srigley's

address as c/o The Belmont Firm and listed Mr. VerStandig of The Belmont Firm as counsel of

record for Mr. Srigley in the related Bankruptcy Case. Court records as of June 7, 2025 list

Christianna A. Cathcart as well as Mr. VerStandig, both of The Belmont Firm, as counsel for Mr.

Srigley in this adversary proceeding. Based on his implied authority as an attorney to accept

service on behalf of his client, Benjamin Srigley, service by mail upon Mr. VerStandig as an

agent for Mr. Srigley, sent to The Belmont Firm address, is proper service upon Mr. Srigley in

this adversary proceeding pursuant to the requirements of Bankruptcy Rule 7004(b)(8). *See* ¶¶

45-48 *supra*.

      **C.**          **Plaintiffs Properly Served Cynthia Srigley**

     53.      Plaintiffs properly served the summons and Complaint upon Cynthia
Srigley by sending it first class United States mail, "Personal & Confidential," addressed to:

> Cynthia Srigley, Chemist
> c/o U.S. Food and Drug Administration
> Human Foods Program
> 5001 Campus Drive, HFS-009
> College Park, MD 20740-3835

     54.      Pursuant to Bankruptcy Rule 7004(b)(1), service of process upon an

individual is proper if it is mailed to either the individual's dwelling or to the place the individual

"regularly conducts a business or profession." For the same reasons discussed *supra* in ¶¶ 41-42,

despite their due diligence, Plaintiffs have been unable to locate a currently valid physical

address for Cynthia Srigley's domicile. Instead, Plaintiffs served Dr. Srigley at the place she

"regularly conducts a business or profession," which, upon information and belief, is the Human

Foods Program at the U.S. Food and Drug Administration (the "**FDA**").[18]

      55.      Upon information and belief, Cynthia Srigley has worked for the FDA for well over a decade, a fact supported in her own bio from the Debtor's former website.[19] Her position with the FDA is mentioned in previous filings in this Bankruptcy Case and in this adversary proceeding. *See* the Bandis' May 31 and June 5 Statements to the Trustee, Touchstone Remodelers' Response to Interrogatories, at items 3, 4 and 19, and Touchstone Remodelers' Production of Requested Documents at items 38 and 69, all attached in Appendix A of the Motion for Derivative Standing (Dkt. No. 29 (Case No. 23-00116-ELG)). *See also* Touchstone Remodelers LLC's Damages (AAA Case No. 01-21-0018-1548) dated July 1, 2022, attached in Appendix C of the Complaint (Dkt. No. 1 (Adv. Pro. No. 25-10009-ELG)).

      56.      Plaintiffs have no reason to believe mail sent to Dr. Srigley at the above-referenced address would not be reasonably calculated to reach her. Plaintiffs served Dr. Srigley on April 28, 2025 and have not received returned mail to indicate that the mail had not been received.

III.      **Each Cause of Action Set Forth in the Complaint Properly States a Claim upon which Relief May Be Granted**

      57.      The facts alleged in the Complaint state a claim for relief with respect to Counts Five (V), Six (VI) and Seven (VII) sufficient to survive a challenge pursuant to Rule

---

[18] *See* screenshots of Cynthia Srigley's LinkedIn page, MUSC College of Graduate Studies 2024 Career Day and scientific paper recently co-authored by Dr. Srigley, evidencing her position with the FDA and related mailing address, attached in **Appendix A**. Upon information and belief, the Center for Food Safety and Applied Nutrition is now called the Human Foods Program.

[19] *See* Cynthia Srigley's bio from the Debtor's former website (www.touchstoneremodelers.com), attached for ease of reference in **Appendix A** (also incorporated by reference in the Complaint at ¶ 28, n.13 (Dkt. No. 1 (Adv. Pro. No. 25-10009-ELG)) Upon information and belief, Cynthia Srigley did not terminate her employment with the FDA while serving as Chief Operations Officer for the Debtor, but instead was on temporary leave.

12(b)(6) of the Federal Rules of Civil Procedure. Plaintiffs have set forth specific facts and documentary evidence in the Complaint, or incorporated therein by reference, to establish that Cynthia Srigley was a member, owner and officer of the Debtor (Counts Five and Six) and to support the claim of common law conspiracy (Count Seven) as against Benjamin Srigley and Cynthia Srigley.

**A.**   **Counts Five and Six of the Complaint State a Claim for Relief with Respect to Cynthia Srigley, Who Was a Member, Owner and Officer of the Debtor**

58.    Defendants argue that both Count Five (breach of fiduciary duties to the debtor pursuant to D.C. Code § 29-804.09) and Count Six (liability for improper distributions made by the Debtor in violation of D.C. Code §§ 29-804.05(a) and 29-804.09) of the Complaint fail to state a claim with respect to Cynthia Srigley, on the following bases:

(i)    "the Complaint never clearly or cogently alleges [Dr.] Srigley to have been a member, officer or director of Touchstone";

(ii)    "Ms. Srigley is not—and never was—a member of Touchstone"; and

(iii)    "Ms. Sirgley [sic] is, and at all times relevant has been, a legal stranger to Touchstone. Ms. Srigley, quite simply, has never held any position capable of imbuing her with any fiduciary obligations to the Debtor."

*See* Motion to Dismiss at 17-18 (footnote omitted) (Dkt. No. 7 (Adv. Pro. No. 25-10009-ELG)).

59.    Regarding (i), Defendants' claim is demonstrably false. In the Complaint, Plaintiffs allege the following with respect to Cynthia Srigley, in pertinent part:

> Upon information and belief, the Debtor was owned by Benjamin Robert Srigley and Cynthia Tyburczy Srigley(fn11)…. *In addition to her ownership role,* Cynthia Srigley, the spouse of Benjamin Srigley, held several positions with the Debtor at relevant times herein: *she was the Chief Operations Officer* from May of 2021 through the end of December 2021, the Director of Business Development (unofficial) from August of 2019 to May of 2021, and the Office Manager from December of 2021 to May of 2021.(fn13) She also appears to be the signatory on all checks written out of the Debtor's Bank of America, N.A. account ending in 3252

("**BofA 3252**" or the "**Operating Account**") from approximately February 10, 2021 until August 3, 2022, the date of the last check written out of that account.

Complaint at ¶ 28 (emphasis added) (Dkt. No. 1 (Adv. Pro. No. 25-10009-ELG)). Footnotes 11 and 13 in the above paragraph incorporate by reference in the Complaint the following documents establishing Cynthia Srigley's role as member and officer of Touchstone: Debtor's Responses to Interrogatory No. 19 and Table 2, Touchstone Remodelers' Response to Interrogatories (AAA Case No. 01-21-0018-1548), dated April 14, 2022 and screenshot of Cynthia Srigley's bio from the Debtor's former website (Exhibits 1 and 18 to Plaintiffs' May 31, 2023 Statement to the Trustee), attached in Appendix A to the Motion for Derivative Standing (Dkt. No. 29 (Case No. 23-00116-ELG)). *See also* Complaint at ¶ 106 and related footnote 55 (referencing Dr. Srigley's role as Chief Operations Officer of the Debtor) (Dkt. No. 1 (Adv. Pro. No. 25-10009-ELG)).

60.    The documents referenced in ¶ 59 are the Debtor's own documents, which were presumably written by Benjamin Srigley and Cynthia Srigley themselves, or were otherwise authorized, approved or accepted by them. The document entitled "Touchstone Remodelers' Response to Interrogatories" was filed by the Debtor in the arbitration action resulting in the judgment owed to the Plaintiffs, and the Srigleys' responses therein were purportedly under oath. *See* Complaint at ¶¶ 18, 20.

61.    Not only does the Debtor's Response to Interrogatories state that Cynthia Srigley held the position of "Chief Operations Officer (official): 5/3/21–12/31/21," it describes her relationship with the Debtor on three separate dates as that of "Owner." The following is an excerpt from Table 2 of the Response to Interrogatories, listing only entries relating to Benjamin

22

Srigley and Cynthia Srigley (references to other individuals have been removed).

| Table 2. Listing of Touchstone Remodelers' staff on specified dates | | | |
|---|---|---|---|
| Date | Name | Affiliation | Relationship |
| 3/18/21 | Benjamin Srigley | Touchstone Remodelers | Owner |
| 3/18/21 | Cynthia Srigley | Touchstone Remodelers | Consultant |
| 8/1/21 | Benjamin Srigley | Touchstone Remodelers | Owner |
| 8/1/21 | Cynthia Srigley | Touchstone Remodelers | Owner |
| 11/1/21 | Benjamin Srigley | Touchstone Remodelers | Owner |
| 11/1/21 | Cynthia Srigley | Touchstone Remodelers | Owner |
| 12/21/21 | Benjamin Srigley | Touchstone Remodelers | Owner |
| 12/21/21 | Cynthia Srigley | Touchstone Remodelers | Owner |

*See* Debtor's Responses to Interrogatory No. 19 and Table 2 of Touchstone Remodelers'
Response to Interrogatories, attached in Appendix A to the Motion for Derivative Standing (Dkt.
No. 29 (Case No. 23-00116-ELG)).

62.      Her bio from the Debtor's own website explicitly states: "Cynthia Srigley
proudly serves as Chief Operations Officer at Touchstone Remodelers."[20]

63.      As for (i) and (iii) referenced in ¶ 58, Defendants again misrepresent the
facts. Cynthia Srigley, as an owner, is (or was) a member of the Debtor.[21] As such, she owed
fiduciary duties to the Debtor. Further, in either her capacity as owner/member of the Debtor, or
as its Chief Operations Officer, she cannot be described as a "legal stranger" to Touchstone.

64.      Additionally, Plaintiffs have alleged in the Complaint that the Srigleys

---

[20] *See* Cynthia Srigley's bio from the Debtor's former website (www.touchstoneremodelers.com),
attached in **Appendix A.**

[21] Owners of an LLC are called members, which is the formal legal title of an owner. *See* screenshots
from IRS and DCLP websites, attached in **Appendix A.**

may have intentionally concealed assets and information during the Bankruptcy Case. In particular, item (1) of ¶ 142 states: "the fact that the Debtor likely had (or had within the two years prior to the Petition Date) another owner, member and manager, Cynthia Srigley" was not disclosed in the Petition. *See id.*

**B.** **Count Seven of the Complaint States a Claim for Relief for Common Law Conspiracy Against Benjamin Srigley and Cynthia Srigley**

65.     With respect to Count Seven, Defendants claim that " it is, quite genuinely, impossible to surmise what illicit activity allegedly underlies the at-issue conspiracy," that "the Srigleys have absolutely no idea what underlying tortious act is being alleged," and that Plaintiffs have "posit[ed] overly vague, non-conforming claims for relief—like one for 'conspiracy' that does not so much as identify any underlying tort." *See* Motion to Dismiss at 18-19 (Dkt. No. 7 (Adv. Pro. No. 25-10009-ELG)).

66.     To the contrary, Count Seven of the Complaint alleges with specificity:

> The unlawful, illegal, and/or oppressive acts include, but are not limited to, *conspiring to breach the fiduciary duties they, as officers, etc., owed to the Debtor and its creditors* by, among other things, causing or deepening the indebtedness of the Debtor by obtaining unnecessary credit and loans in the Debtor's name, and facilitating fraudulent transfers.

Complaint at ¶ 218 (emphasis added) (Dkt. No. 1 (Adv. Pro. No. 25-10009-ELG)).

67.     With respect to the underlying tortious act giving rise to the conspiracy, the Srigleys' breach of fiduciary duties to the Debtor is described in Count Five of the Complaint at ¶¶ 203-9. Facts relating to the Srigleys' obtaining of unnecessary credit and loans in the Debtor's name are addressed at ¶¶ 55-66 and 74-86 and the Srigleys' facilitating of fraudulent transfers are addressed at ¶¶ 35-54. *See* Complaint (Dkt. No. 1 (Adv. Pro. No. 25-10009-ELG)).

68.    The Complaint further alleges, again supported by facts, the following

unlawful, illegal, and/or oppressive acts, some or all of which constitute breaches of fiduciary

duty and others which are unlawful or illegal in and of themselves:

  (i)   that the Debtor, at the direction of the Srigleys, fraudulently incurred additional
        debt while insolvent and while winding down its business and facing arbitration
        (Complaint at ¶¶ 114-122);

  (ii)  that the Debtor, at the direction of the Srigleys, fraudulently transferred assets
        while shutting down its business and arbitrating (Complaint at ¶¶ 123-124);

  (iii) that the Srigleys may have used the Debtor's business to engage in tax
        improprieties to benefit themselves (Complaint at ¶¶ 125-139); and

  (iv)  that the Srigleys used the LLC form of the Debtor to perpetrate fraud and/or to
        achieve an unjust result (Complaint at ¶¶ 94-101).

69.    Finally, Plaintiffs respectfully request that, should this Court determine

that any part of the Complaint is defective in stating a claim for relief, the Court allow Plaintiffs

to cure any such defects by amendment or supplementation.

## CONCLUSION

WHEREFORE, Plaintiffs respectfully request that this Court deny the Motion to

Dismiss in its entirety.

Dated: June 16, 2025


Respectfully submitted by:


FEDERICO M. BANDI                                    -and-          ANGELA M. BANDI
3606 Chesapeake Street, NW                                          3606 Chesapeake Street, NW
Washington, DC. 20008                                               Washington, DC. 20008
Telephone: 773-612-4163                                             Telephone: 773-620-1932
Email: fbandi1@jhu.edu                                              Email: angela.bandi@yahoo.com

## CERTIFICATE OF SERVICE

**PLEASE TAKE NOTICE** that on June 16, 2025, a true and correct copy of the attached

***Response to Motion to Dismiss of Defendants Benjamin Srigley, Cynthia Srigley and Srigley***

***Development Company, LLC*** was served upon the following parties via U.S. Mail:

**Benjamin Srigley**
**c/o The Belmont Firm**
**1050 Connecticut Avenue, NW, Suite 500**
**Washington, DC 20036**

**Benjamin Srigley, Officer**
**Srigley Development Company, LLC**
**c/o The Belmont Firm**
**1050 Connecticut Avenue, NW, Suite 500**
**Washington, DC 20036**

**Benjamin Srigley, Officer**
**Touchstone Remodelers, LLC**
**c/o The Belmont Firm**
**1050 Connecticut Avenue, NW, Suite 500**
**Washington, DC 20036**

**Cynthia Srigley, Chemist**
**c/o U.S. Food and Drug Administration**
**Human Foods Program**
**5001 Campus Drive, HFS-009**
**College Park, MD 20740-3835**

**Christianna Cathcart**
**The Belmont Firm**
**1050 Connecticut Avenue, NW, Suite 500**
**Washington, DC 20036**

**Maurice VerStandig**
**The Belmont Firm**
**1050 Connecticut Avenue, NW, Suite 500**
**Washington, DC 20036**

Respectfully submitted by:

FEDERICO M. BANDI                                    -and-      ANGELA M. BANDI
3606 Chesapeake Street, NW                                      3606 Chesapeake Street, NW
Washington, DC. 20008                                          Washington, DC. 20008
Telephone: 773-612-4163                                        Telephone: 773-620-1932
Email: fbandi1@jhu.edu                                         Email: angela.bandi@yahoo.com

# APPENDIX A

Area ×

Washington, DC 20008
(773) 620-1932
angela.bandi@yahoo.com
*Added: 10/20/2023*
*(Creditor)*

**Federico M. Bandi**
3606 Chesapeake Street, NW
Washington, DC 20008
(773) 612-4163
fbandi@jhu.edu
*Added: 10/18/2023*
*(Creditor)*

| | | |
|---|---|---|
| **Benjamin Srigley**<br>c/o The Belmont Firm<br>1050 Connecticut Ave, NW<br>Suite 500<br>Washington, DC 20036<br>*Added: 11/03/2024*<br>*(Interested Party)* | represented by | **Maurice Belmont VerStandig**<br>The VerStandig Law Firm, LLC<br>9812 Falls Road<br>#114-160<br>Potomac, MD 20854<br>301-444-4600<br>mac@mbvesq.com<br>*Assigned: 11/03/24* |
| **Touchstone Remodelers, LLC**<br>1025 Connecticut Avenue, NWSuite 615<br>Washington, DC 20008<br>Tax ID / EIN: 45-3812338<br>*Added: 04/28/2023*<br>*(Debtor)* | represented by | **Maurice Belmont VerStandig**<br>The VerStandig Law Firm, LLC<br>9812 Falls Road<br>#114-160<br>Potomac, MD 20854<br>301-444-4600<br>mac@mbvesq.com<br>*Assigned: 04/28/23* |

**U. S. Trustee for Region Four**
U. S. Trustee's Office
1725 Duke Street
Suite 650
Alexandria, VA 22314
703-557-7176
USTPRegion04.DC.ECF@USDOJ.GOV
*Added: 04/28/2023*
*(U.S. Trustee)*

| | | |
|---|---|---|
| **William Douglas White**<br>McCarthy & White PLLC<br>8205 Pettit Court<br>22102<br>Mclean, VA 22102<br>703-770-9265<br>wdw@mccarthywhite.com<br>*Added: 04/28/2023*<br>*(Trustee)* | represented by | **William Douglas White**<br>McCarthy & White PLLC<br>8205 Pettit Court<br>22102<br>Mclean, VA 22102<br>703-770-9265<br>wdw@mccarthywhite.com<br>*Assigned: 06/15/23* |



9:27 AM   Sun Jun 8

🛜 98%

**Linked** in

linkedin.com

Sign in

Join now

| Articles | People | Learning | Jobs | Games |

## Experience

**FDA**

14 years 3 months

**Chemist**
Jan 2023 - Present · 2 years 6 months
College Park, MD

**Research Chemist**
Jun 2016 - Jan 2023 · 6 years 8 months
College Park, MD

**Chemist**
Nov 2012 - May 2016 · 3 years 7 months
College Park, MD

**Postdoctoral Research Fellow**
Apr 2011 - Nov 2012 · 1 year 8 months
College Park, MD
Analytical method development and validation



**Chief Operations Officer**
Touchstone Remodelers
May 2021 - Dec 2021 · 8 months
Silver Spring, Maryland, United States

**Christopher Cappelli**
Senior Advisor to the Director, Division of Global HIV & TB at Centers for...
United States
Connect

**Ann Powers**
Associate Director of Science at the Centers for Disease Control and...
Fort Collins, CO
Connect

**Cassandra L. Taylor, Ph.D.**
Public Health Advisor at FDA (CDER)
Washington, DC
Connect

**Ashay Mehta**
Edison, NJ
Connect

**Kristen Little**
Sr. Strategic Research Advisor II at Population Services International
Los Alamos, NM
Connect



gradstudies.musc.edu

MUSC
Medical University
of South Carolina

College of Graduate Studies

Academic Programs    Graduate Life    Postdoctoral Affairs    Research & Innovation    Who We Are

Search

Home › Who We Are › News › Career Day

## Who We Are

▼ | News & Events

Career Day

Research Day    ▲

Pioneers in Science    ▲

**Register now for Career Day 2024!**

# Career Day



NEXT
NETWORK EXPLORE TRANSITION

## Career Day 2024

**November 15, 2024
Wellness Center Auditorium**

Career Day helps develop career planning strategies and exposes students to new career opportunities.

gradstudies.musc.edu

## Register Now

| Time | Event |
|------|-------|
| 9:00-9:20 a.m. | **Sign-in and Breakfast** |
| 9:20-9:30 a.m. | **Welcome**<br>Michael Bouchard, Ph.D., Dean, College of Graduate Studies |
| 9:30-10:30 a.m. | **Focus on Academic/Research Intensive Careers**<br>Hailay Teklehaimanot, M.D., DSc, Chief, Asthma & Air Quality Branch, Centers for Disease Control<br>Aditya Gadiko, MS, Senior Director, Product Management, Saama<br>Serena-Kaye Sims, Ph.D., Assistant Profesor, Department of Biology, College of Charleston |
| 10:30-11:30 a.m. | **Morning Panel Discussion**<br>Hailay Teklehaimanot, M.D., DSc, Chief, Asthma & Air Quality Branch, Centers for Disease Control<br>Aditya Gadiko, MS, Senior Director, Product Management, Saama<br>Serena-Kaye Sims, Ph.D., Assistant Profesor, Department of Biology, College of Charleston |
| 11:30 a.m. | Lunch lines begin |
| 12:00-1:30 p.m. | **Keynote Address: Do you survive or thrive as immigrants? What it takes to succeed.**<br>Parampal Deol, Ph.D., MBA, Vice President Research & Development for Manufacturing, Charles River |
| 1:00-1:15 p.m. | **Break** |
| 1:15-2:15 p.m. | **Focus on Careers Beyond the Bench**<br>Joshua M. Rhett, Ph.D., Scientific Director, Lockwood<br>Lindsey Calcutt, Ph.D., CEO, Incora Health<br>Cynthia Srigley, Ph.D., Chemist, Human Foods Program, Food & Drug Administration |

1:39 PM  Mon Jul 1

🔒 link.springer.com

🔋 100%

l Chemistry

# Analyte and matrix method extension of per- and polyfluoroalkyl substances in food and feed

Communication | Open access | Published: 02 August 2024

Volume 416, pages 627–633, (2024)    Cite this article

**Download PDF** →

✓ You have full access t

Use our pre-submission checklist →

Avoid common mistakes on your manuscript.

✕

## Cynthia Srigley

Center for Food Safety and Applied Nutrition, US Food and Drug Administration, 5001 Campus Drive, College Park, MD, 20740, USA

You can also search for this author in
PubMed | Google Scholar

**View author publications**

Part of a collection:
**Food Safety Analysis 2.0**

**Sections**    **Figures**    **References**

Abstract

Introduction

Materials and methods

Results

Discussion

Susan Genualdi ✉, Wendy Young, Elsie Peprah, Cynthia Srigley, Christine M. Fisher, Brian Ng & Lowri deJager

🔖 3861 Accesses    📖 2 Citations    ⊕ 1 Altmetric    Explore all metrics →

## Abstract

The development and expansion of analytical methods for per- and polyfluoroalkyl substances (PFAS) in food are essential for the continued monitoring of the United States (US) food supply and assessments of dietary exposure. In March 2022, the European Union Reference Laboratory for Halogenated Persistent Organic Pollutants in Feed and Food (EURL POPs) released a guidance document covering priority PFAS of interest, including

Remodelers Tea...   x   +

uizon   🔒 touchstoneremodelers.com/about-us/our-team/   🏠 Stepping from Ma...   📄 Business

🔒 touchstoneremodelers.com/about-us/our-team/   🏠 Stepping from Ma...   📄 Business

MATLAB-Python...

◢◣ TOUCHSTONE
ONE HOME REMODEL INC

PORTFOLIO   EXPERTISE   APPROACH   ABOUT   BLOG   CONTACT



acrobatic plane on occasion. Ben and his wife live in Chevy Chase, MD where they lead an active life that includes traveling, boating, scuba diving, and weight training.

## Cindy Srigley
### COO

Cindy Srigley proudly serves as Chief Operations Officer at Touchstone Remodelers. Cindy's passion for learning, her eagerness to tackle new and challenging projects, and her depth of proven expertise make her a perfect fit to oversee the administrative side of Touchstone

Cindy came into her current role at Touchstone Remodelers through a rather unconventional route. Classically trained in the life sciences, she received B.S., M.S., and Ph.D. degrees from Cornell University and a Master's Certificate in Project Management from George Washington University/Strategy Execution. Prior to joining the Touchstone team, Cindy held a 10-year appointment as a Research Chemist at the US Food and Drug Administration (FDA) and built an impressive resume, having published more than 30 original peer-reviewed journal articles and having given numerous scientific presentations throughout North America, Europe, and in South Africa. She is also the author of ISO International Standard 23349 and is considered an expert in process development. Cindy is thrilled to now be applying her broad range of skills to the residential remodeling industry.

Outside of work, Cindy pursues an athletic lifestyle. She enjoys dancing, strength training, horseback riding, hiking, and skiing. Living for the summertime, she and her husband, Ben, often escape to their favorite beach destinations for long weekends of boating, scuba diving, and dining on seafood.

# IRS

File | Pay | Refunds | Credits & Deductions | Forms & Instructions

Help | News | English ∨ | Tax Pros | Sign in

Search

Home / File / Businesses and self-employed / Business structures / Limited liability company (LLC)

# Limited liability company (LLC)

English | Español | 中文 (繁體) | 한국어 | Русский | Tiếng Việt

Individuals

**Businesses and self-employed**

Business tax account

Employer ID numbers

Business taxes

Business structures

Sole proprietorships

Partnerships

Corporations

S corporations

A Limited Liability Company (LLC) is a business structure allowed by state statute. Each state may use different regulations, you should check with your state if you are interested in starting a Limited Liability Company.

Owners of an LLC are called members. Most states do not restrict ownership, so members may include individuals, corporations, other LLCs and foreign entities. There is no maximum number of members. Most states also permit "single-member" LLCs, those having only one owner.

A few types of businesses generally cannot be LLCs, such as banks and insurance companies. Check your state's requirements and the federal tax regulations for further information. There are special rules for foreign LLCs.

## Classifications

Depending on elections made by the LLC and the number of members, the IRS will treat an LLC as either a corporation, partnership, or as part of the LLC's owner's tax return (a "disregarded entity"). Specifically, a domestic LLC with at least two members is classified as a partnership for federal income tax purposes unless it files Form 8832 and affirmatively elects to be treated as a corporation. For income tax purposes, an LLC with only one member is treated as an entity disregarded as

### Related Topics

- Single member limited liability companies
- LLC filing as a corporation or partnership
- Limited liability company - Possible repercussions
- Where to file tax returns - addresses listed by return type
- Powers of attorney for LLCs
- Business structures

### Forms & Instructions

- About Form 8832, Entity Classification Election



# Domestic Limited Liability Company

Limited Liability Company (LLC) is an unincorporated association, with one or more members, domestic or foreign. Owners risk only their investment and personal assets not at risk. Owners manage and control business that can be run by one person. LLCs are more complicated than partnership while it is easier to set up and maintain than corporation. LLCs are being taxed on earnings and owners can be taxed on business income.

A limited liability company may have any lawful purpose, regardless of whether for profit

To register domestic limited liability company in the District, customer shall deliver articles of organization form DLC-1 to the Superintendent for filing either by web or by mail / walk-in.

NOTE: Walk-in Customers will be charged expedited fee for one day service in the amount of $100 in addition to regular filing fees.

## Online Filing

Go to CorpOnline, create a profile, access the online services main page *(use Internet Explorer 8, Chrome, Firefox or Safari)* and Online filers must pay by credit card. Once filing is submitted, print the last confirmation page for your records.